UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

        -against-                                   S1 05 Crim. 0888 (LAK)

JEFFREY STEIN, et al.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION
(Corrected)

Appearances:

> Justin S. Weddle
> Kevin M. Downing
> Stanley J. Okula, Jr.
> Margaret Garnett
> Assistant United States Attorneys
> MICHAEL J. GARCIA
> UNITED STATES ATTORNEY

> Stanley S. Arkin
> Joseph V. DiBlasi
> Elizabeth A. Fitzwater
> ARKIN KAPLAN LLP
> *Attorneys for Jeffrey Eischeid*

LEWIS A. KAPLAN, *District Judge.*

        Now before the Court is the motion of defendant Jeffrey Eischeid to dismiss the indictment on the grounds that aspects of the deferred prosecution agreement between the government and KPMG constitute prosecutorial misconduct and deprive movant of rights under the Fifth and Sixth Amendments.

*Facts*

When the government investigation that led to this indictment became known, KPMG sought to avoid indictment. Discussions ensued between the firm and the government. On August 26, 2005, those discussions resulted in the execution of a deferred prosecution agreement ("DPA") pursuant to which KPMG, among other things, (1) consented to the filing in this Court of a one-count information charging the firm with conspiracy to defraud the United States, to commit tax evasion, to make and subscribe false and fraudulent tax returns, and to aid and assist in the preparation and filing of such tax returns, (2) agreed to pay a total of $456 million to the United States, (3) accepted restrictions on its practice, and (4) undertook to cooperate with the government regarding the investigation. The government agreed in exchange to defer prosecution through December 31, 2006 and, if KPMG complies with its obligations under the DPA, to seek dismissal of the information without prejudice.

A central part of the deal was KPMG's admission of the accuracy of a Statement of Facts that was made part of the DPA. It undertook also that:

> it shall not, through its attorneys, agent, partners, or employees, make any statement, in litigation or otherwise, contradicting the Statement of Facts or its representations in this Agreement

On another front, KPMG agreed that its continued cooperation with the government's investigation would include:

> (e) Not asserting, in relation to the [United States Attorney's] Office, any claim of privilege (including but not limited to the attorney-client privilege and the work product protection) as to any documents, records, information, or testimony requested by the Office related to its investigation, provided that:

* * *

(II) by producing privileged materials pursuant to this subparagraph (e), KPMG does not intend to waive the protection of the attorney-client privilege, work product protection, or any other applicable privilege as to third parties.

*Discussion*

*The Statement of Facts*

Defendant Eischeid maintains that the provisions of the DPA regarding the Statement of Facts require "KPMG, upon pain of corporate death, [to] espouse a government-approved version of facts, . . . convert to a strict view that the tax strategies at issue in this case are inherently fraudulent[, and] prohibit[] KPMG and any of its employees from making any statement, in any context, which is inconsistent with these 'facts.'"[1] In substance, if not in so many words, he argues that the government is forcing KPMG-affiliated witnesses to sing out of the government's hymn book, regardless of the facts and their personal beliefs.

The government attorneys charged with the prosecution of this case, like any other attorneys, are ethically prohibited from adducing evidence that they know to be false.[2] The government, like any other litigant, is prohibited from coercing witnesses to give false testimony. Moreover:

"our constitutional notions of fair play and due process dictate that defense counsel be free from obstruction, whether it come from the prosecutor in the case or from a

---

[1] Def. Mem. 1.

[2] Code of Prof. Resp. DR 7-102.

state official or another state acting under color of law.

> "A trial is a search for the truth. This is no less true in a criminal matter than in a civil matter. . . . A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal case without the consent of opposing counsel. . . . The right to effective counsel embraces more than just the right to retain counsel."[3]

Thus, the government neither may obstruct defendants' access to potential witnesses nor pressure such witnesses to give testimony it knows to be false.

At first blush, the language of the DPA perhaps seems a bit overbroad in threatening reprisal against KPMG for "any statement, in litigation or otherwise, contradicting the Statement of Facts or its representations" by any of KPMG's "attorneys, agent, partners, or employees." But it is important to take this provision in context.

First, the government has a legitimate interest in seeing to it that KPMG not gain the benefit of deferred prosecution, only to undermine its formal acceptance of guilt by making statements inconsistent with it. Such behavior would threaten to make a mockery of our criminal justice system. But the context that is relevant here has a more precise focus as well.

The DPA does not purport to control the actions of individuals. What it requires is that KPMG, upon notice from the government and in order to avoid imputation of a statement to it, promptly disavow any assertion by an affiliated individual that is inconsistent with the Statement of Facts. The government expressly disavows any intention of using this provision to pressure individuals, directly or through the agency of KPMG, to testify in any particular way or to limit

---

[3] *Int'l Bus. Mach. Corp. v. Edelstein,* 526 F.2d 37, 44 (2d Cir. 1975) (quoting *Coppolino v. Helpern,* 266 F. Supp. 930, 935-36 (S.D.N.Y. 1967) (internal quotation marks omitted)).

access by the defense to potential witnesses.[4] It has no objection to KPMG providing the defendants with copies of documents that they saw or that were directed to them while they were KPMG employees.[5] Thus, there is no basis to suppose that the DPA provisions in question will be used to retaliate against KPMG should any of its employees cooperate with the defense in any appropriate way. In other words, the Court has no reason to believe that the government does not fully appreciate the difference between appropriate action to ensure that KPMG does not undermine its admission of guilt, on the one hand, and utterly intolerable interference with the defense of this case, on the other.

The Court is mindful of the fact that the government is not the only source of defendant's concern. KPMG has a strong motive to avoid anything during the deferral period that could give the government cause for unhappiness, and its employees doubtless are aware of that. It therefore is possible that an individual on its payroll might think twice before doing or saying anything that more senior KPMG executives might regard as possibly displeasing to prosecutors. But there are at least two answers to this quite natural concern. First, it is speculative. Second, any attempt by KPMG to interfere with or retaliate for testimony or voluntary cooperation with the defense by KPMG employees could result in prosecution of any responsible individual and perhaps even the firm.[6] Nor would the decision whether to bring such charges necessarily rest with the

---

[4] Tr., Mar. 30, 2006, at 10-11, 33-34.

[5] *Id.* at 33-34.

[6] *See, e.g.,* 18 U.S.C. §§ 401-02, 1512-13.

government.[7]

In these circumstances, defendant Eischeid's claim based upon the DPA and the Statement of Facts to which KPMG agreed is unpersuasive.

*Attorney-Client Privilege Waiver*

Defendant Eischeid claims that the government's procurement in the DPA of what he calls "KPMG's agreement to selectively waive any attorney-client privilege or work product protection in favor of the Government only"[8] also constitutes prosecutorial misconduct.

Many commentators have criticized the Department of Justice's position with respect to extracting waivers of the attorney-client privilege from actual and potential corporate defendants.[9] But the question whether the Department's position in this regard is overly aggressive ultimately is beside the point in this context.

The attorney-client privilege and work product protection that were waived here belonged to KPMG, not to Eischeid. If there is just cause for complaint, it belongs to KPMG, not to Eischeid, who never had any basis for supposing that the firm's attorney-client privilege protected him. Nor is his position bolstered by what he calls the selective nature of the waiver – i.e., a waiver in favor of the government subject to the reservation that KPMG, in waiving as to the government, claimed that it did not intend to waive as to others. Certainly the government did not benefit from

---

[7] *See id.* § 401; *Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787 (1987).

[8] Def. Mem. 1.

[9] *See, e.g.,* Mary Jo White, *Corporate Criminal Liability: What Has Gone Wrong?*, Prac. Law Inst., Corp. Law and Prac. Course Handbook Series, Nov. 2004, 815, 821.

7

KPMG's reservation of the ability to claim – for whatever value it has[10] – that its disclosures to the government were not intended to waive its privilege *vis-a-vis* others.

*Conclusion*

The motion of defendant Jeffrey Eischeid to dismiss the indictment [docket item 245] is denied. in all respects.

SO ORDERED.

Dated: April 5, 2006

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[10] It is far from clear that KPMG's reservation would have any effect. *See, e.g., Ratliff v. Davis Polk & Wardwell,* 354 F.3d 165, 170 n.5 (2d Cir. 2003) (attorney-client privilege waived by selective disclosure to government agency); *In re Steinhardt Partners, L.P.,* 9 F.3d 230, 235 (2d Cir. 1993) (work product waived by selective disclosure to SEC); *In re John Doe Corp.,* 675 F.2d 482, 489 (2d Cir. 1982) (attorney-client privilege waived by selective disclosure to government agency). The Court, however, need not now decide this point.